Your Honor, my name is Jordan Lewis. I'm with the law firm of Siegel, Brill, Guttner, Duffy, and Foster in Minneapolis. I represent the appellant, Felicia Davis, with my co-counsel, Michael Cohen. And will Mr. Cohen be arguing? He will not. Okay. Do you want to reserve any time? Two minutes. Can we set the clock at eight? Oh, sure. I just find it's easier this way. That way, when your eight's up, you're not invading your two minutes. I appreciate that, Your Honor. Go right ahead. Your Honor, we are here today to seek a reversal of the trial court's Rule 12, the dismissal of Felicia Davis' claim. She has brought a claim with a single count. That is, a claim brought under the California unfair competition law. The California claim is premised on what we believe to be the defendant in Pacific Capital Bank's violation of the federal statute, the unearned interest statute at 15 U.S.C. 1615. Given the complexity of the issues and the shortness of time, I hope to touch on three points here today. The first is the statutory framework upon which the preemption is found, or at least we believe to have been found based on the trial court's two-sentence order. The second is a synthesis of the relevant cases. Because this is a federal bank and the National Bank Act applies, there is a large quantum of cases cited by Pacific. But when the issues are narrowed appropriately, there's really, we believe, only three cases that have bearing on the resolution of this appeal. And finally, if I get to it, Your Honor, I would like to at least touch upon the alternative argument that Pacific advances, that is, that the charge was interest as a matter of, was not interest as a matter of law. What was the charge called? The charge was called total prepaid finance charge. Total prepaid finance. And you say it's interest. I do. And you say because it was paid before the 48th day, your client is entitled to a refund of interest, calculating the number of days it took to get the refund back. I do. If the refund takes 55 days, what happens? There is no refund. Well, if it's interest, if it's interest, don't you see what I mean? I mean, if it takes 100 days, if it's interest, it should keep accruing. Well, Your Honor, that, there was some comment by the trial court judge to that effect. We've cited U.S. Supreme Court law, TILA law, National Bank Act law that suggests, that shows that interest doesn't have to continue to accrue in order to constitute interest. The premise, I think, that you've suggested is that in order to be interest, the charge must accrue. There is, the case law that interprets interest does not say that. It can be a one-time fee, it can be a fee over time, and then. So your view is it's interest up to 48 days, and then it, even though it's interest, it ceases to accrue? It ceases to be charged, yes. I will, I'll, having touched now on the third point, I'll turn to the, first to the preemption. What do you make of Congress's decision to substitute the term interest charge for the broader term finance charge? In the unearned interest statute? Yeah. Could the Court repeat the question, please? Yeah. The question is, what do you make of Congress's decision to substitute the phrase interest charge for the broader term finance charge? Does that help or hurt your argument? Or does it cast any light on it at all? I don't, I may not understand the question. I read this statute to embrace the charge, the total prepaid finance charge that Felicia Davis paid as part of her refund anticipation loan. Let me ask the question this way. If 1615 retained the language, quote, finance charge, close quote, rather than the phrase interest charge, would your argument be stronger or weaker? Well, I suppose the argument would be weaker because Pacific uses the term finance charge. The ---- I'm not talking about Pacific. I'm talking about what Congress did. I know the language Pacific used. Frankly, Your Honor, I don't think it makes a difference. I think that the, I think that the language of this statute embraces the charge that Pacific imposed. And ---- If it's a finance, if it's, we conclude it's a finance charge, you lose. Right? Right? Well, the ---- I'm not saying we're going to. I'm just saying if we conclude that what's at issue here, however Pacific described it, is a finance charge, don't you lose? On the other hand, if we conclude it's an interest charge, don't you win? Well, first of all, Your Honor, I don't ---- Yes. The short answer is yes. The longer answer is there is no factual finding below, and based on the case law, this strikes me as, at minimum, a trial issue. What is the proper characterization of this charge? I'm going to return to preemption. I have a question about that. What does the Federal statute say about remedies? Assuming one has a right to recover as a general matter, what does it say about remedies? Your Honor, are you talking about the unearned interest statute? Yes. I believe that that statute is silent as to remedies. Okay. So what does that ---- Does that mean it preempts a State statute that says if you have a right to recover something like this, here's the vehicle in the State of California? No, I don't believe it does. There's no preemption language at all in the unearned interest statute. The preemption language is found in the Code of Federal Regulations 12 CFR 7.4008. That's the regulation specific sites, and we agree that if preemption applies, it applies from that regulation. And the point that we've tried to make in the brief is that the ---- there is no burden that can be established, no additional burden that can be established by Pacific in complying with the unearned interest statute. If we're right about the correct characterization of this charge, Pacific is obliged to comply with this statute without regard to this lawsuit. If we're wrong ---- What prevents somebody from just charging a flat finance fee for something like this? Is there any rule against that? We're not going to allow finance fees. Whether you call it a finance fee or a chicken or interest, it's interest. That's all there is to it. Is there something around that says you can't have a finance fee for an arrangement like this? I'm not aware of that. And wasn't this called a finance charge? It was called a total prepaid finance charge, yes. Well, so I'm having trouble just understanding how you can transmogrify this into interest. There's nothing that prohibits a total finance charge. This is called a total finance charge. And so why isn't it? Well, it's ---- Why isn't it? It is also ---- Excuse me. It is also conveyed in an interest format. What do you mean? I mean, this is lawyers trying to force things into boxes where they don't fit. How is it conveyed as an interest charge? Well, it establishes a 57 and some odd APR. It provides that the ---- Where does it say 57 point something APR? It says that on the finance documents, the documents that Felicia Davis signed. It establishes what the interest rate is. It says so. I think it's 0.969 percent. And if you do the math as I did, Your Honor, that equals, I believe it's $1.70 in interest imposed per day for the length of the loan, which was 48 days, which is set forth in the refund anticipation loan documents. The loan was repaid 10 days earlier, which means that a portion, we believe, and no doubt it is untested, but a portion of that interest is unearned. But 10 days late, we don't care about it anymore, even though it's 57 percent. Well, we certainly ---- You say it's conveyed in an interest format, but yet the interest then terminates at the end of the ---- Your Honor, I don't believe ---- I'm sorry. I don't believe that the interest terminates. There isn't an additional charge, but that isn't dispositive of the correct characterization of this charge. You're over your time. Yes, I am. You have two minutes for rebuttal. We'll hear from the bank at this time. Thank you. Mr. Seelan. Good morning, Your Honors. Brad Seelan representing the Appellee Pacific Capital Bank. Your Honors, there are two reasons to affirm the district court's judgment. The first is that Federal law preempts Ms. Davis's attempt to use State law, the California unfair competition law, to regulate Pacific Capital's nonreal estate lending practices. Hasn't the Supreme Court made pretty clear that if Congress wants to preempt a field, they know how to say so? Certainly, Your Honor, but we are not relying on field preemption. We're relying on the express preemption that's provided under the regulations specifically. But I'm saying we wouldn't have this issue if Congress had specifically said in the statutory framework surrounding 1615 that it was meant to preempt State remedies. Correct? I think we would have this issue because that was the issue in Silvis where, under the OTS regs, there is a provision that talks about field preemption, but we still had a lawsuit brought under the California unfair competition law seeking the underlying wrong there was an alleged violation of Federal law, and we still had litigation over that, and the district court in Silvis and this court said that that claim was preempted. So the fact that there's preemptive language doesn't prevent lawsuits from happening. The question in preemption is what Congress has done and what the regulators have done, what they've said is off-limits to State regulation, and our argument here is that the OCC in its regulations has specifically said that this type of lawsuit is off-limits. So you can't – Congress can pass as broad a law as it wants, but it doesn't prevent people from filing lawsuits, and it's up to the court to sort out whether the lawsuit in question is seeking to regulate in a preempted area. Isn't the definition of interest under the NDA pretty broad? The definition of interest under the NDA is pretty broad, but that's not the definition we should be looking to in this case. In fact, your clients argued the breadth of the definition of interest before the Second Circuit in Pacific Capital Bank v. Connecticut and before the District of New Jersey in Pacific Capital Bank v. Milgram, right? That's correct. And there is a difference in – remember, we start with what statute we're dealing with here. We're dealing with Section 1615, 15 U.S.C. 1615, 16 – I'm sorry, 1615. And that section comes within the provisions of the Truth in Lending Act. And under 1602, the Truth in Lending Act provides that the definitions under the Truth in Lending Act are the definitions that you should be looking to in interpreting the provisions of that subchapter. 1615, although it isn't a part of TILA, was put within TILA. So I think what's relevant for the definition of interest is to look at how interest is defined in TILA as opposed to how it's defined under the National Bank Act. And why that's important, Your Honor, is that you see, as you talked about the legislative history, originally this statute, when it was proposed, talked about refunding the finance charge. And then that was changed to a more narrow term, the interest charge. All of those terms, finance charge, interest charge, those are all things that appear under TILA and under the definitions provided under TILA. So I – tell me if I'm wrong. I presume that Mr. Ryan, in structuring these kinds of loans, made a business judgment about the window of time within which the refund would actually come back. Is that correct? No, Your Honor. No. In terms of the amount of fee, in terms of how long the loan is outstanding? No. I mean, to a certain extent, if Your Honor's question is, these are refund anticipation loans, so they're based on an anticipated time. Well, my colleague asked a perfectly logical question. If, you know, what happens when you get – the check comes back outside the window? Correct. And I suppose the loan documentation could have provided – your client wrote it, right? That's correct. It could have provided that interest would continue to calculate, or this charge would continue to calculate and accrue until the refund check actually came back, right? It certainly could have done that, but it didn't. Okay. And your client's business judgment was to fix the window within which that would happen? No. The business judgment was to calculate the amount of fee without reference to time. There is no reference to time. How do you do that, though? How do you do that? I can't believe that somebody didn't say the, you know, the interest on money like this for 48-whatever-it-is is such-and-so, and that will be part of it. Well, Your Honor, in this case, the formula is simply calculating a flat fee and a percentage of the loan. So as you see in the record, on page 29, I believe, page 30, it shows that – I'm sorry, no, it's 31. It shows that the amount of that fee doesn't change by reference to time. And so there is no element of time that's used in calculating this. So how did they calculate the flat fee, then? Did they roll the dice? Did they flip a coin? I mean, people dealing with money usually figure out what the interest would be on money for a certain period of time. Well, Your Honor, that isn't in the record. And, again, this isn't a calculation of interest. It's calculating the fee that the bank deems appropriate to charge this loan. Yeah, okay. Well, what does all this business about estimated APR, then, mean, and why is it in there? Estimated APR is something that's required to be disclosed under the Truth in Lending Act. APR is a determination that Congress has said is necessary for consumers so that they can make an apples-to-apples comparison on the cost of credit. So if you've got two loan products, one of which says it's got a 40 percent interest rate and no fees, and the other has an $85 flat fee, the APR puts those together and expresses the total finance charge. Everything that the consumer has to pay to finance that loan, to pay for that money, takes that and expresses it as an annualized rate so the consumer can look and say, boy, even though this interest rate seems high at 40 percent and I'm only paying $85 as a fee here, under the APR, this 40 percent interest rate loan is actually cheaper for me. So APR is a required disclosure under truth in lending, and I think that makes, that comes back to making the point about why the national bank definitions of interest are not relevant and the ones to look at are truth in lending and to see how all of those terms fit together, interest, finance charge, all unique terms within truth in lending. Getting back to preemption, we have relied on a long line of Ninth Circuit cases. There aren't just three cases that talk about the scope of national bank preemption. There's a long line of preemption cases in the Ninth Circuit and the U.S. Supreme Court, and those cases start with the presumption, well, there's generally a presumption against preemption. That's the general presumption, except when you get into the national bank context. And the cases are clear in the Ninth Circuit, the Bank of America versus San Francisco case and the Wells Fargo versus Boutros case. Ninth Circuit says that preemption doesn't apply in National Banking Act regulation because the national regulation of national banks goes back to the Civil War. So the cases to look at are not these state court cases, which are really almost exclusively what Ms. Davis relies on, the Hood case and the Rose case. Those cases start with the wrong, from the wrong place. They start with the presumption against preemption. They start there. Back to the business judgment end of this. Is it fair to say that your client, in offering this loan product, concluded that fixed the charge, whether it be called finance or interest, based on some estimation or calculation that some refunds would come early, some would come late, some would come right on time? Certainly. And certainly that's a reality of this type of product, Your Honor. That's the reality. But the calculation is based. Given those realities, it's just a simple business decision to say we're not going to get into that, calculating a particular amount for a particular time when this loan pays off in three weeks and this loan pays off in three weeks and two days. We're going to charge a flat fee. So that's the business determination that's made. And just to conclude, the two bases, the preemption bases, the Federal cases clearly support the bank's position, and this is clearly not unearned interest that needs to be refunded. If we agree with you, I'm not saying we will, but if we agree with you on the interest versus finance charge, the preemption issue, we don't need to reach that, do we? You wouldn't. Okay. Thank you for your argument. Thank you. You have two minutes for rebuttal, counsel. The quantum of Federal preemption cases is cited, but the precise issue arises in three of them. That is a plaintiff bringing a claim under the UCL where the substantive violation is a violation of Federal law. The three cases are the Silvis case, which this Court affirmed, the Hood case, and the Smith case. And it is not the Pacific's view that the two state court cases are simply wrong and should be ignored in favor of the Silvis cases. And we have demonstrated in our reply brief that the cases synthesized together make sense. And the dispositive pivot point is the fact that Silvis was a claim for violation of the Homeowners' Loan Act. And the interpretive regulation was found in the OTS regs, which talked about field preemption. The entire field was preempted. Our case, the Smith case, and the Hood case were all brought under the National Bank Act where the interpretive regulations, the OCC, and even the preemptive language that he relies upon, the Pacific relies upon, is itself qualified from beginning to end. The preemption language is qualified and there are specific examples found in the preemptive statute, 7.4008, of state laws that are not preempted. So that's point one. Point two is if you look at Supreme Court precedent, Smiley, which was invoked by Pacific, Smiley discusses the meaning of interest and says at page 745, 46, any flat charge may of course readily be converted to a percentage charge, which indeed was the basis for 19th century decisions holding that flat charges violated State usury laws establishing maximum rates. The rates that are referred to here are interest rates. I don't believe that on this record the trial court can find, as it may have found, that the charge imposed here was interest as a matter of law. That's simply not been resolved. That's all I have. All right. Thank you very much. Thank you for your argument. Both sides, very interesting case, well argued. It will now be submitted for decision. And we'll proceed to the next case in the argument calendar, which is the United States against Victor Fernandez.
judges: Trott, Hawkins, Bright